February 19, 2025

**VIA ECF**
The Honorable Victor Marrero
United States District Judge
500 Pearl Street, Courtroom 15B
New York, NY 10007

      Re:    *United States v. Global Business Travel Group, Inc., et al.*, 1:25-cv-00215-VM

Dear Judge Marrero:

      The United States, Global Business Travel Group, Inc. ("Amex GBT"), and CWT Holdings, LLC ("CWT") (collectively, the "Parties"), respectfully submit this joint letter addressing the issues outlined in the Court's February 13, 2025 Order.

**I.**    **Brief Description of the Case, Including the Factual and Legal Bases for the Claim(s) and Defense(s)**

      ***The United States' Statement of the Case and Its Claims.***  The United States seeks to permanently enjoin Amex GBT's proposed acquisition of CWT pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18.  Business travel management companies like Amex GBT and CWT help corporate customers manage their employees' business travel by providing booking, invoicing, reimbursement, and policy-management services.  The proposed acquisition would combine the first- and third-largest business travel management companies in the world, eliminating substantial head-to-head competition between Amex GBT and CWT and risking higher prices, fewer choices, and less innovation.

      The proposed acquisition particularly threatens harm to global and multinational corporations, which have complex needs for their travel programs due to their significant annual travel spend and cross-border footprint.  Because few travel management companies have the scale necessary to meet these needs, global and multinational customers' options are limited.  And for that reason, the relevant market for sales of business travel management services to U.S. global and multinational corporations is highly concentrated, with three firms—the merging parties, Amex GBT and CWT, as well as one other competitor, BCD Travel—controlling a significant share of the market and having competitive advantages over their smaller competitors.  The proposed acquisition would further increase concentration in this already highly concentrated market, and it is therefore presumptively illegal.

      As detailed in the complaint, Amex GBT and CWT routinely compete for bids for global and multinational customer accounts.  This competition forces Amex GBT and CWT, as well as their competitors, to offer lower prices and better service to win customers' business.  The proposed acquisition would end that competition and the benefits it brings to customers.  In addition, CWT's willingness to partner with emerging technology companies has enabled those technology companies to bring their products to more customers and facilitated the development of technology that threatens Amex GBT's current business model.  The proposed acquisition would eliminate this important and willing partner to new technology companies.

1

***Defendants' Statement of the Case and Their Defenses.*** Plaintiff seeks to enjoin Amex GBT from acquiring CWT, arguing the proposed acquisition will substantially lessen competition and harm large "global and multinational" customers of business travel management services. Both Amex GBT and CWT are travel management companies ("TMCs") that help businesses of all sizes ranging from small and medium-sized enterprises to some of the world's largest multinational corporations to manage employee travel by booking flights and hotels, tracking employee travel expenses, and providing related ancillary services. Business travel had ground to a halt during the COVID-19 pandemic, resulting in a seismic transformation in the industry over the past five years as businesses have changed the way they work and travel. During that time, as customers of all sizes have shifted to digital tools to manage their operations, technology-led TMCs have grown and won significant business, including some of the world's biggest companies, from more traditional TMCs. Other traditional TMCs have also expanded significantly since the pandemic and gained customers at the expense of Amex GBT and CWT. And all TMCs face the persistent threat of disintermediation by customers opting simply to book a plane ticket or hotel room themselves directly with suppliers—an outcome that airlines and hotels actively encourage to avoid having to pay TMC fees and compete on TMCs' platforms that provide the transparency that enables customers to cross-shop among suppliers. In short, the TMC industry is characterized by intense competition from many traditional and tech-led competitors, as well as from powerful travel suppliers.

In filing this action, Plaintiff ignored these realities, and instead presents an inaccurate picture of the current industry using cherry-picked facts, isolated examples, and stale, out-of-context statements that do not reflect today's competitive landscape. *First*, the Complaint gerrymanders a contrived antitrust product market of the country's top global multinational companies—excluding regional and/or smaller companies—but identifies no facts showing that these customers receive unique products or services or even have similar purchasing patterns or demands. In today's world, there are no meaningful differences in the business travel management services that TMCs provide to "global and multinational customers" as compared with other regional and/or smaller companies that fall outside that bucket (however Plaintiff may seek to define it). Amex GBT, CWT, and many of their competitors offer and sell all of their services to all types of businesses, large and small. The government's artificial and arbitrary focus on "global and multinational customers" wholly ignores that customers of all shapes and sizes demand similar services from their TMC—a fact evidenced by independent survey data that Plaintiff has in its possession, but neglects to mention. Moreover, Plaintiff's proposed market draws a circle around the world's most sophisticated companies, each of which has the means to protect itself through alternative suppliers, technology solutions, established and highly sophisticated procurement functions, and negotiation leverage.

*Second*, the Complaint also ignores the basic market reality that these top customers today are served by several other TMCs, most of which the Amex GBT bidding data show winning more bid value in actual new customer contracts from Amex GBT than does CWT, including winning some of the world's largest and most sophisticated global companies. At least 7 TMC competitors of Amex GBT and CWT—BCD, FCM, CTM, Navan, Kayak for Business (Booking.com), Spotnana, and Direct Travel—meet the business travel requirements of large customers. The number of bidders is especially important where these top customers procure services through RFPs and bids. In other words, hard facts clearly disprove the suggestion that

this transaction reduces the number of effective competitors from "three to two," or even from "four to three" or "five to four."

*Third*, Plaintiff's putative geographic antitrust market of the United States is also artificially narrow. If there is any relevant market for global and multinational customers (however that group is defined), then it is clearly global, as the client label suggests. Plaintiff's conclusory allegations are devoid of any "distinct needs or priorities" for "U.S." global and multinational customers, because there are none.

*Fourth*, Plaintiff cannot show any reasonable probability that the acquisition would substantially lessen competition because, as the U.K. Competition and Markets Authority ("CMA") stated in its supplementary interim report issued on February 18, 2025, CWT's continuing financial difficulties make it "a materially weaker competitor" such that it "exercises a considerably weaker constraint on GBT." Further, the CMA provisionally concluded from the bidding data that BCD and GBT are substantially stronger than CWT.[1] *See New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 216 (S.D.N.Y. 2020) (explaining that "[e]vidence that a merging party is a 'weakened competitor' that cannot compete effectively in the future" can be used to show an acquisition will not substantially lessen competition) (*citing United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 498 (1974)). Following CWT's bankruptcy filing in 2021, CWT's financial performance remains weak and, as found by the CMA, is likely to further weaken in the future. Indeed, CWT's financial condition is such that it qualifies the merger for the "failing firm" defense.

*Lastly*, Plaintiff ignores that this transaction is procompetitive and will create substantial cognizable merger-specific efficiencies, cost-synergies, and other procompetitive effects that will enable Amex GBT to better invest in technology and provide better outcomes for both Amex GBT's and CWT's clients and employees than the status quo. These benefits greatly outweigh any alleged anticompetitive effects.

At bottom, Plaintiff's Complaint does not account for how the business travel industry looks today. It takes a narrow and backward-looking view of the market, and fails to recognize that the travel industry has transformed dramatically since the beginning of the pandemic five years ago. In so doing, the Complaint misstates the facts and fails to meaningfully engage with the forward-looking analysis that the law demands. *See Deutsche Telekom AG*, 439 F. Supp. 3d at 198 (recognizing that "Courts must judge the likelihood of anticompetitive effects in the context of the 'structure, history, and probable future' of the particular markets that the merger will affect.") (*quoting Gen. Dynamics Corp.*, 415 U.S. at 498). A proper evaluation of the "structure, history, and probable future" of the TMC marketplace that takes into account today's competitive dynamics, and the significant benefits that will accrue to business travelers as a result of this transaction, will show that Plaintiff is stuck in the past. In reality, there is robust competition in the marketplace for customers of all sizes, and this acquisition will lead to better services and more competition for corporate travelers. The CMA agrees: in its supplementary interim report, the CMA provisionally concluded that the proposed acquisition is not likely to

---

[1] https://www.gov.uk/cma-cases/global-business-travel-group-inc-slash-cwt-holdings-llc-merger-inquiry?utm_medium=email&utm_campaign=govuk-notifications-topic&utm_source=5c332558-2177-4c04-887f-db7613e7a59b&utm_content=immediately#supplementary-interim-report

substantially lessen competition. Thus, this litigation is now the sole remaining hurdle preventing the Parties from closing this transaction.

## II.     Any Contemplated Motions

Following the Court's order denying in part and granting in part the motions to seal the Parties' submissions relating to Defendants' motion for reconsideration (ECF No. 49), the Parties are engaged in active discussions regarding the proper scope of redactions to comply with the Court's order. Depending on the outcome of those discussions, Defendants may file renewed letter motions to seal, as outlined in the Stipulated Protective Order, to accompany the versions of the Parties' submissions that will be filed on the public docket with narrowly tailored redactions.

As outlined in the Parties' proposed Scheduling and Case Management Order (the "CMO"), the Parties have agreed that no motions to dismiss, motions for judgment on the pleadings, or motions for summary judgment will be filed in this case. The Parties anticipate that each side may file motions *in limine* and *Daubert* motions before trial, although the Parties cannot identify the number and subject matter of those motions at this time.

## III.    The Prospect for Settlement

The Parties have engaged in extensive discussions regarding the United States' claims and Defendants' defenses during the United States' pre-complaint investigation. The United States engaged with Defendants extensively prior to the filing of the complaint, but Defendants did not propose a remedy to address the United States' concerns. The United States is willing to discuss settlement with Defendants, but without knowing what remedy Defendants would propose, the United States is unable to express a strong view on the likelihood of settlement. Defendants are willing to engage in settlement discussions but have no view on whether there is a reasonable prospect to reach a settlement. In any event, the Parties' proposed CMO contains agreed-upon provisions for the consideration and discovery of evidence relating to any proposed remedy, should one be proposed in the future.

## IV.    Whether the Parties Consent to Proceed for All Purposes Before the Magistrate Judge Designated for This Action

The Parties do not consent to proceed for all purposes before the Magistrate Judge designated for this action.

## V.     Completed Case Management Plan

Concurrent with the filing of this letter, the Parties have filed a motion for entry of a proposed CMO. After extensive negotiations, the Parties have reached agreement on all CMO provisions with one exception, as outlined in that motion.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeffrey Vernon* | */s/ Steven Sunshine* |

Jeffrey G. Vernon
James L. Moore III
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 8000
Washington, DC 20530
Telephone: (202) 367-6424
Facsimile: (202) 616-2441
Email: jeffrey.vernon@usdoj.gov
Email: james.moore4@usdoj.gov

*Counsel for Plaintiff United States of America*

Steven C. Sunshine
Julia K. York (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1440 New York Avenue N.W.
Washington, DC 20005
Telephone: (202) 371-7860
Facsimile: (202) 661-0560
Email: steve.sunshine@skadden.com
Email: julia.york@skadden.com

Kenneth B. Schwartz
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-2731
Facsimile: (917) 777-2731
Email: ken.schwartz@skadden.com

Michael L. Weiner
Lee F. Berger (*pro hac vice*)
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3957
Facsimile: (202) 429-3902
Email: mweiner@steptoe.com

*Counsel for Global Business Travel Group, Inc.*

*/s/ Michael Murray*

Michael F. Murray
Ryan Phair
Paul Hastings LLP
2050 M St. NW
Washington, DC 20036
Telephone: (202) 551-1730
Facsimile: (202) 551-0230
Email: michaelmurray@paulhastings.com
Email: ryanphair@paulhastings.com

*Counsel for CWT Holdings, LLC*