## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>450 Fifth Street NW, Suite 8000<br>Washington, DC 20530,<br><br>*Plaintiff*,<br><br>v.<br><br>GLOBAL BUSINESS TRAVEL GROUP, INC.<br>666 Third Avenue, 4th Floor<br>New York, NY 10017,<br><br>and<br><br>CWT HOLDINGS, LLC<br>701 Carlson Parkway<br>Minnetonka, MN 55305,<br><br>*Defendants*. | Case No. 1:25-cv-00215-VM-GS |

## AMENDED ANSWER OF DEFENDANT
## GLOBAL BUSINESS TRAVEL GROUP, INC.

Defendant Global Business Travel Group, Inc. hereby submits its amended answer to the complaint filed on January 10, 2025 (the "Complaint") by plaintiff United States of America ("Plaintiff").

## PRELIMINARY STATEMENT

This action seeks to enjoin Global Business Travel Group, Inc. (d/b/a American Express Global Business Travel ("Amex GBT")) from acquiring CWT. Both Amex GBT and CWT are travel management companies ("TMCs") that help businesses of all sizes ranging from small- and medium-sized enterprises to some of the world's largest multinational corporations to

1

manage employee travel by booking flights and hotels, tracking employee travel expenses, and providing related ancillary services.  Business travel—the TMC industry's lifeblood—ground to a halt during the COVID-19 pandemic, resulting in a seismic transformation in the industry over the past five years as businesses have changed the way they work and travel.  During that time, as customers of all sizes have shifted to digital tools to manage their operations, technology-led TMCs have grown and won significant business from more traditional TMCs.  Other traditional TMCs such as FCM and CTM have also expanded significantly since the pandemic and gained customers at the expense of Amex GBT and CWT.  For its part, following the pandemic's decimation of business travel, CWT filed for bankruptcy in the fall of 2021, and had to engage in another recapitalization campaign in the fall of 2023, with CWT's credit rating placed into selective default.  And all TMCs face the persistent threat of disintermediation by customers opting simply to book a plane ticket or hotel room themselves directly with suppliers—an outcome that airlines and hotels actively work towards to avoid having to pay TMC fees and compete on TMCs' platforms that provide the transparency that enables customers to cross-shop among suppliers.  In short, the TMC industry is characterized by intense competition from many traditional and tech-led competitors, as well as powerful travel suppliers.

Ignoring these realities, the government's Complaint, filed in the waning days of the Biden administration even after understanding this transaction would not close before March 2025, presents a completely inaccurate picture of the <u>current</u> industry using cherry-picked facts, isolated examples, and stale, out-of-context statements that do not reflect <u>today's</u> competitive landscape, all in a blatant politicized effort to bring one final anti-business merger challenge. The Complaint gerrymanders a contrived "market" of the country's top global multinational companies, but identifies no facts showing that these customers receive unique products or

services or even have similar purchasing patterns or demands.  Perhaps most fundamentally, the Complaint also ignores the basic market reality that these top customers today are served by several other TMCs, including BCD, FCM, Navan, Kayak for Business (Booking.com), Spotnana, and Direct Travel, most of which the Amex GBT bidding data show winning more bid value in actual new customer contracts from Amex GBT than does CWT.  Independent survey data also show that at least 6 TMCs meet the requirements of large customers as frequently as CWT.  In other words, hard facts clearly disprove the suggestion that this transaction reduces the number of effective competitors from "three to two," or even from "four to three" or "five to four."

Nor does the Complaint include any meaningful allegations about the future of the TMC industry—the crux of the question before this Court.  There is no basis to prohibit this transaction, which will create tremendous synergies that will enable Amex GBT to better invest in technology and provide better outcomes for both Amex GBT's and CWT's clients and employees than the status quo.

*        *        *

As noted above, the business travel industry has changed dramatically in recent years. The COVID-19 pandemic decimated corporate travel, put severe financial strain on TMCs, and caused a fundamental shift in businesses' ways of working.  These changes included, among others, the increasingly online nature of how businesses want their travel managed.  As enterprises began to adjust to new realities and work travel began to slowly return, tech-led TMCs such as Navan, Spotnana and Kayak for Business (Booking.com) saw their technologies increasingly adopted by customers looking for a digital user experience.  Those technologies, such as advanced user interfaces, integrated payment systems, blockchain-based travel

management and other features, have quickly resonated with business customers. This has resulted in significant commercial successes for these TMCs, including winning some of the world's largest and most sophisticated global companies.

In the face of this industry transformation and evolving technology, legacy TMCs have had to adapt their businesses to stay relevant to customers. Amex GBT has invested hundreds of millions of dollars to meet customers' and suppliers' changing needs, including extensive efforts to support and drive airline adoption of New Distribution Capability ("NDC"). Amex GBT's NDC program now includes 16 countries, 20 airlines, and is available to more than 15,000 clients. In fact, Amex GBT even fulfilled and surpassed American Airlines' mandate for 30% of transactions to be from NDC by April 21, 2024 via its owned channels, reaching nearly 50% of American Airlines transactions via NDC. Amex GBT believes it is one of the few TMCs to hit this target at scale, demonstrating its commitment to NDC and innovation leadership in partnership with customers, supplier, and technology partners.

Amex GBT has also invested heavily in product development and innovation, including improving online booking tools, mobile tools, access to travel agents via chat, artificial intelligence, and travel manager tools. Additionally, Amex GBT has consistently supported customer choice, offering a wide selection of third-party booking tools. If the proposed transaction were to close, Amex GBT would plan to move CWT customers onto its own platform (i.e., infrastructure, telephony, cyber-security capabilities, etc.) for the purpose of benefitting those customers with Amex GBT's extensive investments, while also continuing to give them a choice of tools as Amex GBT does today. In fact, 40% of Amex GBT's transactions today occur through third-party technology, making it a critical channel and one all CWT customers would benefit from. To cherry-pick its argument, the government mentions only one third-party

technology company in the Complaint—Spotnana—which Amex GBT had concerns about partnering with due to the fact that Spotnana is a competing TMC (and also shares an ownership group with Direct Travel, another competing TMC).

Other legacy TMCs, such as BCD, FCM, CTM and Direct Travel (which Spotnana's owners recently acquired) have similarly invested in acquisitions, partnerships and technology such as modernized online booking tools and mobile applications that appeal to businesses, improving those TMCs' competitiveness and success with businesses of all sizes.

Plaintiff's Complaint does not account for how the business travel industry looks today. It takes a narrow and backward-looking view of the market, and fails to recognize that the travel industry has transformed dramatically since the beginning of the pandemic five years ago.  In so doing, the Complaint misstates the facts and fails to meaningfully engage with the forward-looking analysis that the law demands.  *See New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 198 (S.D.N.Y. 2020) (recognizing that "Courts must judge the likelihood of anticompetitive effects in the context of the 'structure, history, and probable future' of the particular markets that the merger will affect.") (*quoting United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 498 (1974)).  Along the way, the Complaint gets many things wrong.

For one, the Complaint leaves out the fact that Amex GBT loses far more bids (and bid value) to other companies than to CWT.  Amex GBT's post-2020 bidding data show it has lost more total transaction value for global and multinational customers to each of BCD, FCM, Navan and Kayak for Business (Booking.com) than it has to CWT.  Despite repeatedly acknowledging that competition for such customers occurs through bids, the Complaint is bereft of reference to bidding data and instead relies on historical market shares that are wholly irrelevant in a bidding market (particularly since the government draws on information that is in

some cases more than five years old).  Emblematic of the Complaint's distorted presentation of reality is its citation to three isolated CWT bids for global and multinational customers that CWT currently serves.

The Complaint's alleged relevant antitrust market is also legally flawed.  Premised on data and documents that in some cases are more than five years old, it is designed to draw the narrowest of lines around "business travel management services sold to global and multinational customers."  But in today's world, there are no meaningful differences in the business travel management services that TMCs provide to "global and multinational customers" as compared with other regional and/or smaller companies that fall outside that bucket (however the government may seek to define it).  Amex GBT offers and sells <u>all</u> of its services to <u>all</u> types of businesses, large and small.  The government's artificial and arbitrary focus on "global and multinational customers" wholly ignores that customers of all shapes and sizes demand similar services from their TMC—a fact evidenced by survey data that the government has in its possession, but neglects to mention.  This survey of over 1,500 customers encompasses companies whose annual business travel total transaction value ("TTV") exceeds $25 million and companies whose annual TTV is below that mark, and confirms that there are <u>no</u> differences in the features these customers demand from TMCs and <u>no</u> difference in the competitive set of TMC providers capable of meeting these needs.  In fact, both groups valued the same types of TMC features—e.g., global 24/7 support, a range of travel options across continents, digital experiences, program customization—similarly.  Even more telling, and again ignored by the government, is that the survey's robust responses of customers with TTV of more than $25 million also showed that TMCs Spotnana, Trip Group, BCD and FCM all meet those customers' needs.  Nor does the government acknowledge or respond to any of the examples provided of

large and smaller customers using the same products and same configurations.  The Complaint's backwards-looking view of the market is wholly irreconcilable with the real-world data and facts of what customers demand and other TMCs supply.

The government's putative geographic antitrust market of the United States is also artificially narrow.  If there is any relevant market for global and multinational customers (however that group is defined), then it is clearly global, as the client label suggests.  The Complaint's conclusory allegations are devoid of any "distinct needs or priorities" for "U.S." global and multinational customers, because there are none.  Similarly deficient are the Complaint's barest of conclusory assertions that TMCs besides Amex GBT, BCD and CWT lack the scale (or the ability to scale) to effectively compete for global and multinational customers.  This is simply incorrect, as these competitors have shown in recent wins, tout publicly, and will continue to demonstrate in future competition.  Amex GBT's global bid data, as well as the independent survey, reinforce the takeaways from the U.S. bid data—namely, that multiple TMCs successfully compete every day to win business from global and multinational customers.

To bolster Plaintiff's inaccurate portrayal, the Complaint quotes from documents—often several years old—that are taken entirely out of context to depict a misleading narrative of the current competitive landscape and the deal rationale.  Conveniently missing from the Complaint are the reams of data and documentary evidence that detail at least seven other competitors successfully competing for "global multinational customers," Amex GBT's substantial continuing efforts to innovate for customers' evolving needs, and how the proposed transaction will help advance those efforts.  Also telling is the fact that, despite having received nearly two million emails, text messages and other documents from Amex GBT, the government cites no Amex GBT documents that suggest the transaction will confer the ability for the company to

charge higher customer fees, reduce service levels, or that Amex GBT would somehow have the power and incentive to slow industry innovation by acquiring this deteriorating asset. Unsurprisingly, the reality is quite the opposite: bidding data, survey data and other documentary evidence confirm that global multinational customers will have at least <u>eight</u> options fighting it out to meet those customers' needs post-close.  And even if one were to accept—contrary to all the market realities—that the relevant market definition could be gerrymandered to exclude tech-led competitors, the government's Complaint still demonstrates that, at worst, the transaction would take the number of "legacy" TMCs from five to four—a competitive environment that courts and the government routinely find not to pose antitrust harm.  Recognizing the inability to cite accurate market shares, the Complaint fails to identify market shares based on data (instead relying on statements in historical documents) because at bottom Plaintiff understands that it will be unable to secure a presumption of anticompetitive effects under the facts of the markets for customer contract bidding.

This one-sided and inaccurate portrayal comes just five business days before the change in administration in a rushed, apparently politically-motivated Complaint seeking to block the proposed transaction.  The timing of this action is particularly puzzling in light of the government being told by Amex GBT and CWT that this transaction would not close prior to March 2025.  There was no reason, other than a political one, to rush this action.  A proper evaluation of the "structure, history, and probable future" of the TMC marketplace that takes into account today's competitive dynamics, and the significant benefits that will accrue to business travelers as a result of this transaction will show that the Complaint is stuck looking at a past that no longer exists.  In reality, there is robust competition in the marketplace for customers of all sizes, and this acquisition will lead to better services and more competition for corporate

travelers.  Amex GBT is pursuing this transaction to become more efficient, to drive significant cost savings and to improve its capacity to invest in new and enhanced services for customers.

For these reasons, and others described below and to be presented at trial, Plaintiff's claims are entirely without merit.

## ANSWERS TO INDIVIDUAL PARAGRAPHS

In response to the Complaint filed by the Plaintiff, Amex GBT answers as follows. Each paragraph below corresponds to the same-numbered paragraph in the Complaint.  Amex GBT denies all allegations in the Complaint, whether express or implied, that are not specifically admitted below.  Amex GBT denies that the headings contained in the Complaint constitute allegations of fact, and Amex GBT denies them to the extent that they are considered as such. Amex GBT further expressly denies that the Plaintiff is entitled to the requested, or any other, relief.  Amex GBT reserves the right to amend this Answer.  Amex GBT also states that, except to the extent indicated below, it lacks knowledge or information sufficient to form a belief about the truth or falsity of allegations that relate to the actions, statements, or intent of CWT or other third parties.

1.      With respect to the first sentence of Paragraph 1, because the allegations do not purport to define the term "largest," Amex GBT lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 1 and on that basis denies the allegations in the first sentence of Paragraph No. 1.  Amex GBT admits the allegations in the second sentence of Paragraph 1.

2.      Amex GBT admits the allegations in Paragraph 2.

3.      Amex GBT admits that it has made acquisitions of travel management companies including Hogg Robinson Group in 2018, DER Business Travel in 2019, Ovation Travel Group

in January 2021, and Egencia later in 2021.  Amex GBT otherwise denies the allegations in Paragraph 3.

4.      Amex GBT admits that CWT provides business travel management services. Amex GBT lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 4, and on that basis denies the remaining allegations in Paragraph 4.

5.      Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 5, and on that basis denies the allegations in Paragraph 5.

6.      Amex GBT admits the allegations in Paragraph 6.

7.      Amex GBT admits the first and third sentences in Paragraph 7.  Amex GBT lacks knowledge or information sufficient to form a belief as to what constitutes a "core component" of the referenced services and therefore denies the second sentence of Paragraph 7.

8.      Amex GBT admits the allegations in Paragraph 8.

9.      Amex GBT admits that it provides both customer service and technology solutions.  Amex GBT lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 9, and on that basis denies the remaining allegations in Paragraph 9.

10.      Amex GBT lacks knowledge or information sufficient to respond to the last sentence of Paragraph 10 and therefore denies the allegations in the last sentence of Paragraph 10.  With respect to the fourth sentence of Paragraph 10, Amex GBT admits that its travel management contracts tend to run for three to five years, but lacks knowledge or information sufficient to respond as to the remaining allegations in Paragraph 10.  Amex GBT admits the allegations in the first, second, and third sentences of Paragraph 10.

11.     Amex GBT admits the allegations in Paragraph 11.  To the extent the allegations in Paragraph 11 purport to incorporate or reference other Paragraphs of the Complaint, however, Amex GBT refers to its responses to those Paragraphs.

12.     Amex GBT admits that it earns revenue from travel suppliers, corporate customers, and global distribution systems; that it receives per-transaction fees, commissions, and incentives from some travel suppliers; that it receives per-transaction booking fees and management and consulting fees from some corporate customers; and that it receives a per-transaction fee for transactions it books through global distribution systems.  Amex GBT lacks knowledge or information sufficient to respond to the remaining allegations of Paragraph 12 and therefore denies the remaining allegations in Paragraph 12.

13.     To the extent the allegations in Paragraph 13 pertain to Amex GBT, Amex GBT denies the allegations in Paragraph 13.  To the extent the allegations in Paragraph 13 pertain to third parties, Amex GBT lacks knowledge or information sufficient to respond to those allegations and therefore denies the same.

14.     With regard to the first sentence of Paragraph 14, Amex GBT admits that there are a number of characteristics that distinguish individual customers from one another, but lacks knowledge or information about the remainder of the allegations in the first sentence of Paragraph 14 and otherwise denies those allegations.  The second and third sentences of Paragraph 14 purport to characterize an Amex GBT presentation, which is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations in the second and third sentences of Paragraph 14 differ from or mischaracterize the presentation or Amex GBT's current perception of the characteristics of these customer segments, they are denied.

15. The allegations in Paragraph 15 purport to characterize documents and statements made by Amex GBT's representatives which are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize those documents or statements, they are denied.

16. Amex GBT denies the allegations in Paragraph 16.

17. The allegations in Paragraph 17 purport to characterize documents and statements made by Amex GBT's representatives, which are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the documents and statements, they are denied. Amex GBT otherwise lacks knowledge or information sufficient to respond to the allegations of Paragraph 17 and therefore denies the remaining allegations in Paragraph 17.

18. Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 18, and on that basis denies the allegations in Paragraph 18.

19. Amex GBT denies the allegations in the first sentence of Paragraph 19. The remaining allegations in Paragraph 19 purport to characterize documents and statements made by Amex GBT's representatives, which are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the documents and statements, they are denied.

20. Amex GBT denies the allegations in the first sentence of Paragraph 20. The remaining allegations in Paragraph 20 purport to characterize a document made by an Amex GBT representative, which is the best evidence of its contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the document, they are denied.

21.     Amex GBT denies the allegations in the first sentence of Paragraph 21 to the extent they pertain to Amex GBT.  Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of Paragraph 21 as they pertain to third parties and therefore denies the same.  The remaining allegations in Paragraph 21 purport to characterize documents prepared by investors in Amex GBT and CWT, which are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.

22.     Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 22, and on that basis denies the allegations in Paragraph 22.

23.     To the extent the allegations in the first sentence of Paragraph 23 pertain to Amex GBT's bidding data, Amex GBT denies the allegations in the first sentence of Paragraph 23.  To the extent the allegations in the first sentence of Paragraph 23 pertains to third party bidding data, Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of Paragraph 23, and on that basis denies those allegations in the first sentence of Paragraph 23.  The allegations in the second sentence of Paragraph 23 purport to characterize an Amex GBT document, which is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the document, they are denied.

24.     Amex GBT denies the allegations in the first sentence of Paragraph 24.  The remaining allegations in Paragraph 24 purport to characterize an Amex GBT document, which is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the document, they are denied.

25.     Amex GBT denies the allegations in the first, second, third, and fifth sentences of Paragraph 25.  To the extent the allegations in the fourth sentence of Paragraph 25 purport to characterize an Amex GBT statement, that statement is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the statement, they are denied.

26.     Amex GBT denies the allegations in the first sentence of Paragraph 26.  The remaining allegations in Paragraph 26 purport to characterize documents and statements made by representatives of Amex GBT, CWT and a customer of CWT and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents and statements, they are denied.

27.     With respect to the first sentence of Paragraph 27, Amex GBT admits that travel management companies have offered new technological solutions for the business travel management industry in recent years.  Amex GBT denies the remaining allegations in the first sentence of Paragraph 27.  Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the second and third sentences of Paragraph 27, and on that basis denies the allegations in the second and third sentences of Paragraph 27.  The remaining allegations in Paragraph 27 purport to characterize statements made by representatives of Amex GBT and CWT and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents and statements, they are denied.

28.     The allegations in Paragraph 28 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Amex GBT denies the allegations in Paragraph 28.

29.     The allegations in Paragraph 29 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 29.

30.     The allegations in Paragraph 30 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 30.

31.     Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the first, second and third sentences of Paragraph 31, and on that basis denies the allegations in the first, second, and third sentences of sentence of Paragraph 31. Amex GBT denies the fourth sentence of Paragraph 31.

32.     The allegations in Paragraph 32 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 32.

33.     The allegations in Paragraph 33 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 33.

34.     The allegations in Paragraph 34 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 34.

35.     The allegations in the first sentence of Paragraph 35 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT admits that government and military customers have different needs than business travel customers, but denies the remaining allegations in the first sentence of Paragraph 35. The allegations in the

second sentence of Paragraph 35 purport to characterize a document produced by Amex GBT and CWT, which is the best evidence of its contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the document, they are denied. Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the third sentence of Paragraph 35, and on that basis denies the allegations in the third sentence of Paragraph 35.

36.    The allegations in Paragraph 36 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 36.

37.    The allegations in the first and third sentences of Paragraph 37 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in the first and third sentences of Paragraph 37. The allegations in the second sentence of Paragraph 35 purport to characterize statements made by a representative of Amex GBT, which are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the document, they are denied.

38.    The allegations in Paragraph 38 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 38.

39.    The allegations in Paragraph 39 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in Paragraph 39.

40.     The allegations in Paragraph 40 purport characterize a document produced by Amex GBT in 2018, which is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations in Paragraph 40 differ from or mischaracterize the document, they are denied.

41.     The allegations in Paragraph 41 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Amex GBT denies the allegations in Paragraph 41.

42.     The allegations in Paragraph 42 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Amex GBT denies the allegations in Paragraph 42.

43.     The allegations in Paragraph 43 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Amex GBT denies the allegations in Paragraph 43.

44.     Amex GBT denies the allegations in Paragraph 44.

45.     Amex GBT denies the allegations in the first sentence of Paragraph 45.  The allegations in the second and third sentences of Paragraph 45 purport to characterize documents produced by Amex GBT, which are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the documents, they are denied.

46.     Amex GBT denies the allegations in the first and last sentences of Paragraph 46. The allegations in the second, third, and fourth sentences in Paragraph 46 purport to characterize statements made by a former representative of Amex GBT, which are the best evidence of their

contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the statements, they are denied.

47.    Amex GBT admits that it has submitted bids for opportunities where CWT also submitted a bid.  Amex GBT denies the remaining allegations in Paragraph 47.

48.    Amex GBT admits that it has submitted bids for opportunities where CWT also submitted a bid, but lacks knowledge or information to identify the specific bid to which the allegations in the first sentence of Paragraph 48 refer and on that basis denies the allegations. Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of Paragraph 48, and on that basis denies the allegations in the second sentence of Paragraph 48.  The allegations in the third sentence of Paragraph 48 purport to characterize statements made by a representative of Amex GBT and a potential customer, which are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the statements, they are denied.  Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the fourth sentence of Paragraph 48, and on that basis denies the allegations in the fourth sentence of Paragraph 48.  The allegations in the fifth sentence of Paragraph 48 purport to characterize statements made by a representative Amex GBT, which are the best evidence of their contents and, therefore, no response is required. The sixth and seventh sentences of Paragraph 48 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Amex GBT denies the allegations in the sixth and seventh sentences of Paragraph 48.

49.    The allegations in the first three sentences of Paragraph 49 purport to characterize statements made by representatives of Amex GBT and one of its customers, which are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations

differ from or mischaracterize the statements, they are denied. Amex GBT denies the allegations in the last sentence of Paragraph 49.

50.     Amex GBT admits that CWT has on occasion won bids for customers where Amex GBT has also bid, but lacks knowledge or information to identify the specific bid to which the allegations in the first sentence of Paragraph 50 refer and on that basis denies the allegations. The allegations in the second sentence of Paragraph 50 purport to characterize a statement made by a former customer of Amex GBT, which is the best evidence of its contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the statement, they are denied. Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the third sentence of Paragraph 50, and on that basis denies the allegations in the third sentence of Paragraph 50.

51.     The allegations in the first sentence of Paragraph 51 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in the first sentence of Paragraph 51. The allegations in the second sentence of Paragraph 51 purport to characterize a statement made by one of CWT's investors, which is the best evidence of its contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the statement, they are denied.

52.     The allegations in the first sentence of Paragraph 52 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in the first sentence of Paragraph 52. Amex GBT denies the allegations in the second sentence of Paragraph 52.

53.     Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of Paragraph 53, and on that basis denies the allegations in the

first sentence of Paragraph 53. The remaining allegations in Paragraph 53 purport to characterize an email from a CWT investor, which is the best evidence of its contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the email, they are denied:

54. Amex GBT admits that it ultimately agreed to terms on a higher enterprise value for CWT than Amex GBT's October 2023 offer. Amex GBT denies the remaining allegations in Paragraph 54.

55. Amex GBT denies the allegations in the first sentence of Paragraph 55. The remaining allegations in Paragraph 55 purport to characterize a statement made by a representative of Amex GBT, which is the best evidence of its contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the email, they are denied.

56. Amex GBT denies the allegations in Paragraph 56.

57. Amex GBT denies the allegations in the first sentence of Paragraph 57. With respect to the second sentence of Paragraph 57, the allegations reflect an ineffective negotiation tactic from CWT owners in negotiating the proposed transaction. In determining the valuation of CWT, Amex GBT never underwrote any supplier harmonization synergies. Amex GBT otherwise lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of Paragraph 57, and on that basis denies the allegations in the second sentence of Paragraph 57. The third, fourth, and sixth sentences of Paragraph 57 purport to characterize documents and financial projections of the transaction, which are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or

mischaracterize the documents and financial projections, they are denied. Amex GBT denies the fifth sentence of Paragraph 57.

58.     Amex GBT denies the allegations in Paragraph 58.

59.     The allegations in Paragraph 59 purport to characterize statements made by CWT and its customers, which are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the statements, they are denied. Amex GBT lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 59, and on that basis denies the allegations in Paragraph 59.

60.     Amex GBT denies the allegations in the first, second, and fourth sentences of Paragraph 60. The allegations in the third sentence of Paragraph 60 are legal conclusions and therefore do not require a response. To the extent that a response is required, Amex GBT denies the allegations in the third sentence of Paragraph 60.

61.     Amex GBT denies the first sentence of Paragraph 61. Amex GBT admits that CWT has partnered with travel tech companies, including Spotnana, but otherwise lacks knowledge or information sufficient to admit or deny the allegations in the second, third, fourth, fifth, sixth, and seventh sentences of Paragraph 61, and on that basis denies the remaining allegations in the second, third, fourth, fifth, sixth and seventh sentences of Paragraph 61. The allegations in the last sentence of Paragraph 61 purport to characterize statements made by Amex GBT, which are the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the statements, they are denied.

62.     Amex GBT denies the allegations in Paragraph 62.

63.     Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of Paragraph 63, and on that basis denies the remaining

allegations in the first sentence of Paragraph 63.  The allegations in the second sentence of Paragraph 63 purport to characterize statements made by a CWT customer, which are the best evidence of their contents and, therefore, no response is required.  The allegations in the last sentence of Paragraph 63 purport to characterize statements made by Amex GBT, which are the best evidence of their contents.  To the extent the allegations differ from or mischaracterize the statements, they are denied.

64.    Amex GBT denies the allegations in the first and second sentences of Paragraph 64.  The third through seventh sentences in Paragraph 64 purport to characterize statements made by representatives of Amex GBT, which are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the statements, they are denied.

65.    Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of Paragraph 65 and on that basis denies the allegations in the first sentence of Paragraph 65.  The second and third sentences in Paragraph 65 purport to characterize statements made by CWT and its customer, which are the best evidence of their contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the statements, they are denied.

66.    Amex GBT denies the allegations in the first and second sentences of Paragraph 66.  Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the third sentence of Paragraph 66, and on that basis denies the allegations in the third sentence of Paragraph 66.

67.    Amex GBT denies the allegations in the first two sentences of Paragraph 67.  The third sentence in Paragraph 67 purports to characterize statements made by a representative of

Amex GBT, which is the best evidence of their contents and, therefore, no response is required. To the extent the allegations differ from or mischaracterize the statements, they are denied.

68.    Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 68 and on that basis denies the allegations in Paragraph 68.

69.    Amex GBT denies the first sentence of Paragraph 69.  Amex GBT lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 69, and on that basis denies the remaining allegations in Paragraph 69.

70.    Amex GBT denies the last sentence of Paragraph 70.  Amex GBT lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 70, and on that basis denies the remaining allegations in Paragraph 70.

71.    Amex GBT denies the allegations in Paragraph 71.

72.    The allegations in the first sentence of Paragraph 72 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Amex GBT denies the allegations in the first sentence of Paragraph 72.  Amex GBT denies the remaining allegations in Paragraph 72.

73.    Amex GBT admits that CWT filed for bankruptcy in November 2021; and that CWT engaged in a recapitalization in 2023.  Amex GBT lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 73, and on that basis denies the allegations in Paragraph 73.

74.    Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the first and second sentences of Paragraph 74, and on that basis denies the allegations in the first and second sentences of Paragraph 74.  Amex GBT denies the third sentence of Paragraph 74. The allegations in the last sentence of Paragraph 74 purports to

characterize a statement made by a representative of Amex GBT, which is the best evidence of its contents and, therefore, no response is required.  To the extent the allegations differ from or mischaracterize the statements, they are denied.

75.     Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 75 and on that basis denies the allegations in Paragraph 75.

76.     Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 76 and on that basis denies the allegations in Paragraph 76.

77.     Amex GBT admits that Plaintiff purports to take the actions stated in the first sentence of Paragraph 77.  Amex GBT denies that it has violated or will violate Section 7 of the Clayton Act, and denies that Plaintiff is entitled to relief of any kind.  The allegations in the second sentence of Paragraph 77 are legal conclusions and therefore do not require a response. To the extent a response is required, Amex GBT does not challenge the jurisdiction of the Court at this time.  To the extent that Paragraph 77 asserts any factual allegations, Amex GBT denies these allegations.

78.     The allegations in the first sentence of Paragraph 78 are legal conclusions and therefore do not require a response.  To the extent a response is required, Amex GBT admits that it is engaged in interstate commerce and in activities substantially affecting interstate commerce. With respect to the second sentence of Paragraph 78, Amex GBT admits that it provides business travel management services to corporations located throughout the United States and around the globe, and that the services that Amex GBT provides are intended to facilitate domestic and international travel by those customers' employees.

79.     The allegations in the first sentence of Paragraph 79 are legal conclusions and therefore do not require a response.  To the extent a response is required, Amex GBT admits the

first sentence of Paragraph 79.  Amex GBT admits the second sentence of Paragraph 79.  Amex GBT lacks knowledge or information sufficient to admit or deny the allegations in the third sentence of Paragraph 79, and on that basis denies the allegations in the third sentence of Paragraph 79.

80.    Amex GBT reasserts and incorporates its responses to paragraphs 1 through 79 above as if set forth fully herein.

81.    The allegations in Paragraph 81 are legal conclusions and therefore do not require a response.  To the extent a response is required, Amex GBT denies the allegations in Paragraph 81.

82.    The allegations in Paragraph 82 are legal conclusions and therefore do not require a response.  To the extent a response is required, Amex GBT denies the allegations in Paragraph 82.

83.    Amex GBT denies that the Plaintiff is entitled to the requested, or any other, relief, and denies the remaining allegations in Paragraph 83.

## OTHER DEFENSES

Amex GBT asserts the following defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion that it would otherwise not bear under applicable law.  Amex GBT has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.  Amex GBT reserves the right to supplement its defenses as discovery progresses.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Granting relief is contrary to the public interest.

## THIRD AFFIRMATIVE DEFENSE

The Complaint fails to adequately allege any relevant antitrust product market or relevant antitrust geographic markets.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint fails to adequately allege harm to consumers.

## FIFTH AFFIRMATIVE DEFENSE

The Complaint fails to allege undue share in any plausibly defined relevant market.

## SIXTH AFFIRMATIVE DEFENSE

There will be no harm to competition, consumers, or consumer welfare because there is, and will continue to be, entry and expansion by competitors, which is timely, likely, and sufficient.

## SEVENTH AFFIRMATIVE DEFENSE

Consumers have the ability to ensure that they will receive competitive pricing and terms notwithstanding the transaction.

## EIGHTH AFFIRMATIVE DEFENSE

The proposed acquisition is procompetitive and will result in substantial cognizable merger-specific efficiencies, cost-synergies and other procompetitive effects that will greatly benefit customers.  These benefits greatly outweigh any alleged anticompetitive effects.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff cannot show any reasonable probability that the acquisition would substantially lessen competition because CWT's financial condition in recent years has weakened to the point

that it exercises a far weaker constraint on competition with other travel management companies than the information on which the Government relies.

### TENTH AFFIRMATIVE DEFENSE

The proposed acquisition will not create or enhance market power as CWT is a "failing firm" within the meaning of *Citizen Publishing Co. v. United States*, 394 U.S. 131, 138 (1969) and its progeny.

Dated:  Washington, D.C.
        March 11, 2025

*/s/ Steven C. Sunshine*
Steven C. Sunshine
Julia K. York (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue N.W.
Washington, DC 20005
Telephone: (202) 371-7860
Facsimile: (202) 661-0560
Email: steve.sunshine@skadden.com
Email:  julia.york@skadden.com

Kenneth B. Schwartz
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-2731
Facsimile: (917) 777-2731
Email: ken.schwartz@skadden.com

Michael L. Weiner
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3957
Facsimile: (202) 429-3902
Email: mweiner@steptoe.com

Lee F. Berger (*admitted pro hac vice*)
STEPTOE LLP
1330 Connecticut Ave, N.W.
Washington, DC 20036
Telephone: (202) 429-1397
Email: lberger@steptoe.com

*Counsel for Defendant Global Business
Travel Group, Inc.*