April 21, 2025

**VIA ECF**
Honorable Gary Stein, United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 9A
New York, NY 10007

RE:     _United States v. Global Business Travel Group, Inc. et al._, No. 1:25-cv-00215-VM-GS

Dear Judge Stein:

Defendants Global Business Travel Group, Inc. ("GBT") and CWT Holdings LLC ("CWT") (together, "Defendants") respectfully submit this response to Plaintiff's letter (ECF No. 82 ("Letter")) asking that the Court order: (1) Defendants to provide the names of specific individuals for their preliminary witness list no later than May 1; and (2) that any substitutions after that date count as one of the six swaps allowed under the Case Management Plan and Scheduling Order (ECF No. 63 ("CMO")).  The requested relief should be denied.  **_First_**, Defendants' listing of a "representative of" third-party entities, rather than a particular individual, conforms with the CMO.  **_Second_**, Defendants' approach is justified by the significant information asymmetries between the parties.  **_Third_**, Defendants' preliminary list does not prejudice Plaintiff or third parties; Plaintiff will have ample time to conduct discovery of individuals whom Defendants subsequently identify as witnesses.

### Defendants' Preliminary Witness List Conforms With the Bargained-For CMO

Plaintiff's Letter ignores the plain language and negotiation history of the CMO.  In their _very first set_ of comments on Plaintiff's draft CMO, Defendants struck Plaintiffs' proposed requirement that the parties include "the name . . . of each witness" on their preliminary witness list.  (_See_ Exhibit A (Excerpt of Jan. 20, 2025 markup of CMO ¶ 17.A).)  That deletion was made precisely because Defendants lacked access to Plaintiff's investigation file, and—unlike Plaintiff—had no ability to compel third-party discovery during the pre-Complaint investigation.  Had Defendants agreed to specify particular individuals as Plaintiff now contends they must, the CMO would expressly say so, as it does for the final witness list—which requires identification of "the name . . . of each witness."  (CMO ¶ 19.B.)  Plaintiff's position would render meaningless the CMO's distinction between the requirements for the preliminary and final witness lists.  The Court should reject Plaintiff's attempt to renege on terms the parties negotiated in the CMO, particularly when Plaintiff itself recently took the view, in _United States v. Google LLC_, No. 1:20-cv-03010-APM, that listing 16 entities instead of individuals was appropriate for a preliminary witness list.[1]

### Plaintiff Ignores Substantial Information Asymmetries

Plaintiff's Letter also disregards the parties' highly asymmetrical positioning.  Before filing suit, Plaintiff had over eight months to investigate and obtain discovery about this transaction through compulsory process, whereas Defendants had no vehicle to seek third-party discovery

---

[1] While Plaintiff argues that the _Google_ court ultimately "ordered the United States to provide the names of the individual witnesses" (Ltr. at 3), Plaintiff ignores that the _Google_ order occurred during the remedies phase of that case, after four years of litigation and discovery.  Defendants lack the benefit of such substantial discovery here.

before the CMO was entered.  As soon as the Complaint was filed, Defendants requested Plaintiff's investigative file on an outside-counsel-only basis to aid in their third-party discovery planning, but Plaintiff refused to provide access to the file for weeks until the Protective Order was in place.  After reviewing Plaintiff's investigative file—which indicates that Plaintiff contacted at least 90 third parties and interviewed many of their employees—Defendants began serving third-party subpoenas and served interrogatories on Plaintiff seeking, *inter alia*, the names of the individuals interviewed.  Plaintiff claimed that the factual information Defendants sought was work product and refused to respond.  It was only on April 17—in the same email notifying counsel that Plaintiff intended to file its Letter—that Plaintiff agreed to provide the names and contact information of the individuals Plaintiff interviewed (Plaintiff has not yet provided that information).  It is thus entirely disingenuous for Plaintiff to suggest that Defendants have been dilatory in pursuing third-party discovery.  (Ltr. at 3.)

Equally wrong is Plaintiff's suggestion that Defendants can identify specific witnesses at this stage because Defendants communicate regularly with individuals from the listed entities.  (*Id.* at 2.)  Even if Defendants' executives interact with counterparts at other companies, this does not mean that Defendants know who has personal knowledge regarding the relevant issues in this case; that information is best obtained through third-party discovery that is ongoing.  In particular:

*"Customers*."  Seven "customers" on Defendants' preliminary list are large corporations, six of which are former customers that switched away from GBT, CWT, or BCD (whom Plaintiff contends are the *only* three travel management companies ("TMCs") that can service global and multinational customers (Compl. ¶ 25 (ECF No. 1))) to other TMCs such as FCM, CTM, Navan, Spotnana, or Kayak for Business.  Defendants intend to elicit testimony from these "switchers" to show the fallacy of Plaintiff's theory, but the customer contact person or procurement officer involved in a request for proposal ("RFP") at these large corporations may not decide which TMC to select, and each corporation may well have multiple decision-makers.  For example, for at least one customer on Defendants' preliminary list, Defendants understand that multiple decision-makers from two different corporate entities may have been involved in that customer's decision to switch from BCD to Kayak for Business.  Plaintiff's suggestion—that Defendants' executives should have informally contacted former customers they lost to ask who is best compelled to testify about the reasons for the switch—is highly unrealistic.

*Competitors*.  As for the ten competitor third parties on Defendants' preliminary list, without fully understanding allocation of responsibilities at each competitor, Defendants cannot yet confirm the correct individuals.  Again, it is unrealistic for Plaintiff to suggest that Defendants should know the "right" individuals at this stage *because of* contact with competitors through trade associations and competition during RFPs.  (*Id.*)  It would also be entirely speculative for Defendants to guess the right individual at a competitor from a review of "publications."  (*Id.*)[2]

In short, Plaintiff wrongly argues that Defendants must guess the right individual for each

---

[2] Plaintiff erroneously asserts that Defendants could have identified witnesses' names through "informal conversations with counsel" for companies after the Complaint was filed.  (Ltr. at 2.)  Putting aside that it takes time to identify such counsel and for them to make a determination, Plaintiff wrongly assumes that these companies' counsel will provide witness names on an informal and voluntary basis, knowing that doing so will subject those identified to deposition. Indeed, Defendants have posed such inquiries to counsel for the third parties and received little helpful information.

third-party entity without the benefit of any confirmatory discovery—with the penalty for guessing wrong being that Defendants must use one of their six swaps for the final witness list. Such a position prevents the parties from litigating on an even playing field and permits Plaintiff to tactically benefit from its pre-Complaint discovery while seeking to hamstring Defendants that until now have been unable to benefit from compulsory process. Plaintiff's attempt to brush aside the parties' highly asymmetrical positioning in discovery should be rejected.[3]

### Plaintiff's Claims of Prejudice and Third-Party Burden Are Unfounded

Defendants' preliminary witness list does not, as Plaintiff asserts, "prejudice[] the United States' ability to conduct discovery" or "burden third parties." (*Id.* at 1.) Defendants have repeatedly assured Plaintiff that it will not be prevented from timely deposing any individual Defendants identify as a likely witness in the coming weeks or on Defendants' final witness list (which is highly unlikely to include any third party not deposed during fact discovery). Defendants intend to inform Plaintiff of the individuals' names as soon as is practicable, as Defendants have no interest in burdening third parties with unnecessary depositions. Moreover, it is in both parties' interests to ensure timely depositions, especially because most third parties in merger cases testify at trial through deposition designations, not in person. Under these circumstances, it is highly unfair to demand that Defendants identify an individual for each third party by May 1, with the penalty for guessing incorrectly being that Defendants must use one of their six swaps. Listing a representative from a company—rather than naming an individual—provided sufficient notice to Plaintiff because it is the company's facts about which any witness will testify at trial. Those facts will remain the same regardless of the individual who testifies. Defendants' goal is simply to identify through discovery the individual with personal knowledge.

Nor does Defendants' preliminary list unduly burden third parties. All parties have served document subpoenas on each of the third parties on Defendants' preliminary list, and Plaintiff and Defendants will receive the exact same documents from that third party. If, as Plaintiff oddly suggests, it believes it needs additional discovery from these third parties beyond these documents and deposition testimony to come, any "unnecessary burden" is of Plaintiff's own making.

* * * *

Defendants have repeatedly informed Plaintiff they will not wait until the final witness list to identify specific witnesses Defendants intend to call. Defendants offered to provide, by April 18, their best guess of those individuals for each entity on their preliminary list, with the agreement that the parties allow each other to correct those names if discovery proves the initial guess wrong. While Plaintiff rejected this compromise, Defendants still updated Plaintiff on April 18. Defendants have been as forthcoming in discovery as possible despite their highly asymmetrical positioning. Plaintiff should not be permitted to rewrite the CMO to penalize Defendants—who are diligently seeking to identify witnesses with sufficient time for all parties to depose them— with measures that hamstring their defense. Plaintiff's motion should be denied.

---

[3] Plaintiff says that Defendants' pre-Complaint advocacy referenced "many of the same entities" on their preliminary list (Ltr. at 3 n.2), but this ignores that Defendants—unlike Plaintiff—could not seek pre-Complaint discovery from these entities. Those papers included only information that was publicly available or in the possession of the parties.

Respectfully submitted,

Dated: April 21, 2025

/s/ *Steven C. Sunshine*
Steven C. Sunshine
Julia K. York (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue N.W.
Washington, DC 20005
Telephone: (202) 371-7860
Facsimile: (202) 661-0560
Email: steve.sunshine@skadden.com
Email: julia.york@skadden.com

Kenneth B. Schwartz
Michael H. Menitove
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-2731
Facsimile: (917) 777-2731
Email: ken.schwartz@skadden.com
Email:  michael.menitove@skadden.com

Michael L. Weiner
Lee F. Berger (*admitted pro hac vice* )
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3957
Facsimile: (202) 429-3902
Email: mweiner@steptoe.com

*Counsel for Defendant Global Business
Travel Group, Inc.*

/s/ *Michael F. Murray*
Michael F. Murray (*admitted pro hac vice*)
Paul Hastings LLP,
2050 M St. NW,
Washington, DC 20036
Telephone: (202) 551-1730
Email: michaelmurray@paulhastings.com

*Counsel for Defendant CWT Holdings, LLC*