June 30, 2025

**<u>VIA ECF</u>**
Honorable Gary Stein
United States Magistrate Judge
500 Pearl Street, Courtroom 9A
New York, NY 10007

Re:    <u>*United States v. Global Business Travel Group, Inc., et al.*</u>, No. 1:25-cv-00215-VM

Dear Judge Stein:

In response to the Court's June 18, 2025 Order, ECF No. 115, the United States and Global Business Travel Group, Inc. (the "Parties") write to respectfully request that the Court authorize limited continued sealing of redacted filings related to the United States's June 2, 2025 Letter Motion to Compel, ECF No. 105. Following a meet-and-confer, the Parties jointly propose narrowly tailored redactions and targeted sealing of privileged exhibits that balance the presumption of public access with competing considerations—in this case—regarding disclosure that could cause competitive harm or reasonably threaten a private party's commercial interests or breach attorney-client privilege. *See Lugosch v. Pyramid Co. v. Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). These redactions and proposals for sealing are identified in the Appendix to this motion. As requested in the Court's Order, the Parties are submitting the redaction proposals to the Court's chambers via email, which can be docketed publicly by the respective Parties upon the Court's grant of this joint motion. In addition, the Parties agree that no sealing is required with respect to ECF Nos. 107, 113, and 114.

* * * * *

The Second Circuit uses a three-part test to evaluate the propriety of sealing materials on a court's docket. *See United States v. Glob. Bus. Travel Grp., Inc.*, No. 1:25-cv-00215, 2025 WL 1078299, at *1 (S.D.N.Y. Apr. 10, 2025) (citing *Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, No. 23-cv-11168, 2024 WL 1743109, at *8 (S.D.N.Y. Apr. 23, 2024)). First, the court must determine whether the documents at issue are "judicial documents" to which a presumption of public access attaches. *Id.* (citing *Lugosch*, 435 F.3d at 119). "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). If the documents are judicial documents, the court must next determine the weight of the presumption of public access. *Glob. Bus. Travel Grp., Inc.*, 2025 WL 1078299, at *1. Lastly, the court must balance "competing considerations" against the weight of the presumption of access. *Id.*

This presumption of public access is "integral" to the judicial process. *United States v. Erie Cnty.*, 763 F.3d 235, 238-39 (2d Cir. 2014). The Second Circuit's balancing test nonetheless acknowledges that—notwithstanding the presumption—a court "may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'" *See In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). Even then, any sealing should be "narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120; *Echo Bay, LLC v. Torrent*

*Pharma, Inc.*, No. 20-cv-645, 2020 WL 5543070, at *2 (S.D.N.Y. Sept. 16, 2020) ("sealing should be narrowly tailored and redacting sensitive information is a preferable alternative to sealing an entire document") (citations and quotations omitted). Because "a court's authority to oversee discovery . . . is ancillary to the court's core role in adjudicating a case[,] . . . the presumption of public access in filings submitted in connection with discovery disputes . . . is generally somewhat lower," and reasons for sealing "need not be as compelling as those required to seal summary judgment filings." *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).

Three specific objectives animate the Parties' narrow tailoring of documents filed initially under seal pursuant to the United States's June 2 Letter Motion. First, the Parties move to redact material that was not germane to either a Party's arguments or the Court's decision because it was not "relevant to the performance of the judicial function and useful in the judicial process . . . ." *See Brown v. Maxwell*, 929 F.3d at 49; *cf.* S.D.N.Y. Elec. Case Filing R. & Instructions, R. 5.2 ("A Filing User must submit as exhibits only those excerpts of the referenced documents that are relevant to the matter under consideration by the Court."). For example, GBT's white papers submitted as Exhibits F & G to the Rosengart Declaration, ECF Nos. 105-10 & 105-11, were offered to show that the Submitted Analysis was held out as an "ordinary course" analysis. The exhibits contain other content, however, that is not pertinent to that representation. This content warrants sealing because it was not submitted for the Court's consideration in resolving the United States's motion and is not necessary to the public's understanding of the Court's ruling on the motion. The Parties also agree that redaction of individuals' contact information, including non-public email addresses and phone numbers, is appropriate.

Second, the Parties move to redact specific data, information, and methodology that is non-public, recent, and competitively sensitive. *See Global Business Travel Grp.*, ECF No. 81, 2025 WL 1078299, at *2 (discussing considerations for non-public information that reveal specific business information and may provide valuable insights into a company's current business); *see also Parmalat Sec. Litig.*, 258 F.R.D. at 244; *GoSMiLE, Inc. v. Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (granting motion to seal "proprietary material concerning the defendants' marketing strategies"). These predominantly include calculations in support of GBT's non-public sales strategy and the methods used to arrive at those calculations, neither of which would be known by competitors. The Parties have endeavored to apply these redactions as narrowly as possible throughout the filings.

In some instances, both the material's inapplicability to the judicial process and its business sensitivity counsel in favor of redaction. For example, the United States's Letter Motion relied on only the existence of and inclusion of the top table in Exhibit C-1 of the Rosengart Declaration, ECF No. 105-5. *See* Ltr. Mot, ECF No. 105, at 2. The Parties therefore propose redactions to the bottom table both because it was not pertinent to the dispute and because it discloses information about GBT's internal analysis and prioritization of certain verticals. Redactions are also warranted for specific data and analysis developed by GBT in this tab that would not be known outside of the company. On the other hand, the public will retain an ability to observe—as discussed in the Court's order—that the file's Summaries tab contained market sizing calculations. *See* June 18, 2025 Opinion & Order, ECF No. 116, at 3.

2

Third, the Parties move to seal in their entirety ECF Nos. 109-1, 109-5, 109-6, and 109-7 because they are privileged communications submitted by GBT solely for *in camera* review to provide further context for the Court. *See Richards v. Kallish*, No. 22-CV-9095 (CS) (VR), 2023 WL 4883461, at *2 (S.D.N.Y. Aug. 1, 2023) (explaining that "protection of the attorney-client privilege is a 'higher value' under the First Amendment that may rebut the presumption of access" (quoting *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 145 (2d Cir. 2016))). These exhibits consist of communications between GBT and its outside counsel over which GBT has properly asserted attorney-client privilege, and Plaintiff does not object to sealing these exhibits. *See* ECF Nos. 109-1, 109-5, 109-6, and 109-7.

* * * * *

As this litigation progresses, the Second Circuit's balancing test may result in a different outcome for this same content to the extent that it is submitted as evidence at trial. But the Parties' proposed tailored sealing is warranted now given the arguments raised by the Parties and disclosures made in the Court's opinion, the competitive sensitivity and non-public nature of the redacted content, and the attorney-client privilege that protects the completely sealed exhibits. Thus, the Parties respectfully request that the Court grant this motion to continue this narrowly tailored sealing.

Respectfully submitted,

*/s/ Michael Rosengart*

Michael Rosengart (N.Y. Bar #5696117)
United States Department of Justice,
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 568-1705
Facsimile: (202) 616-2441
Email: michael.rosengart@usdoj.gov

*Counsel for Plaintiff United States of America*[1]

*/s/ Steven C. Sunshine*

Steven C. Sunshine
Julia K. York (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
1440 New York Avenue N.W.
Washington, DC 20005

---

[1] Pursuant to S.D.N.Y. Elec. Case Filing R. & Instructions, R. 8.5, Plaintiff has consented to the filing of this joint letter.

3

Telephone: (202) 371-7860
Facsimile: (202) 661-0569
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

Kenneth B. Schwartz
Michael H. Menitove
Evan H. Levicoff
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-2731
Facsimile: (917) 777-2731
Email: ken.schwartz@skadden.com
Email: michael.menitove@skadden.com
Email: evan.levicoff@skadden.com

Michael L. Weiner
Lee F. Berger (*admitted pro hac vice*)
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3957
Facsimile: (202) 429-3902
Email: mweiner@steptoe.com

*Counsel for Defendant Global Business
Travel Group, Inc.*

**APPENDIX**

| Document (ECF No.) | Content | Sealed For | | |
|---|---|---|---|---|
| | | Not Germane | Competitively Sensitive | Attorney-Client Privilege |
| 105 | p. 2: Internal market sizing calculation | | ✓ | |
| 105 | p. 3: Internal dollar figures for overall market size | | ✓ | |
| 105 | p. 3: Internal market share estimate | | ✓ | |
| 105-2 | ¶ 10: Basis for market share numerator | | ✓ | |
| 105-2 | ¶ 10: Calculation for "Grand Total" | | ✓ | |
| 105-2 | ¶ 13: Internal methodology for sizing market | | ✓ | |
| 105-2 | ¶ 20: Internal methodology for sizing market | | ✓ | |
| 105-2 | ¶ 22.k: Internal dollar figures for overall market size | | ✓ | |
| 105-2 | ¶ 22.k: Internal market share estimate | | ✓ | |
| 105-2 | ¶ 30: Basis for market share numerator | | ✓ | |
| 105-2 | ¶ 30: Calculation for "Grand Total" | | ✓ | |
| 105-3 | Non-public email addresses and phone numbers of Amex GBT employees | ✓ | | |
| 105-3 | Specific GBT strategy aims (leaving unredacted generalized direction) | ✓ | ✓ | |
| 105-4 | Non-public email addresses of Amex GBT employees and consultant | ✓ | | |
| 105-5 | Basis for market share numerator | | ✓ | |
| 105-5 | Specific data points and calculations | | ✓ | |
| 105-5 | GBT's internal market segmentation | ✓ | ✓ | |
| 105-6 | Specific comments from Chernoh Sallu (leaving unredacted the author and the date) | ✓ | ✓ | |
| 105-7 | p. 1 & 2: Internal customer counts | ✓ | ✓ | |
| 105-7 | p. 2: Internal methodology for sizing market | ✓ | ✓ | |
| 105-7 | p. 2: Internal market share estimates | | ✓ | |
| 105-8 | Definitions that reflect internal methodology for sizing market | ✓ | ✓ | |

| 105-9 | Specific comments from Chernoh Sallu (leaving unredacted the author and the date) | ✓ | ✓ | |
|---|---|---|---|---|
| 105-10 | p. 34–35: Internal market share estimates | | ✓ | |
| 105-10 | p. 34: Competitive assessments in footnotes to section not subject to U.S. Ltr. Mot. | ✓ | ✓ | |
| 105-10 | p. 36: Internal market size estimates | | ✓ | |
| 105-10 | p. 36: Internal market share estimates | | ✓ | |
| 105-10 | Murray Decl. save for ¶¶ 1, 9 | ✓ | ✓ | |
| 105-10 | Murray Decl. ¶ 9: Internal market size estimate | | ✓ | |
| 105-11 | Tbl of Contents: Internal market share estimate | | ✓ | |
| 105-11 | p. 1, 4: Internal market size estimate | | ✓ | |
| 105-11 | p. 1, 5: Description of expert finding | ✓ | | |
| 105-11 | p. 1: Internal market share estimate | | ✓ | |
| 105-11 | p. 4: Identification of non-party customers | ✓ | | |
| 105-11 | p. 11: Internal market share calculations | | ✓ | |
| 105-11 | p. 13: Internal market size estimate | | ✓ | |
| 105-11 | p. 13, nn.59 & 60: Internal business strategy | ✓ | ✓ | |
| 105-11 | p. 13, n.61: Information supplied by non-party customer | ✓ | | |
| 105-11 | p. 15: Internal market size estimates | | ✓ | |
| 105-11 | p. 15: Internal market share estimates | | ✓ | |
| 105-11 | p. 16–18: Internal methodology for sizing market | | ✓ | |
| 105-11 | p. 16: Internal market size estimates | | ✓ | |
| 105-11 | p. 16: Identification of non-party customers | ✓ | | |
| 105-11 | p. 17: Internal market size estimates | | ✓ | |
| 105-11 | p. 17: Specific data points and calculations | | ✓ | |
| 105-11 | p. 17: GBT's internal market segmentation | | ✓ | |
| 105-15 | Non-public email addresses of Amex GBT employees | ✓ | | |
| 105-16 | Basis for market share numerator | | ✓ | |
| 105-16 | Specific data points and calculations | | ✓ | |

| 108-2 | Non-public email addresses and phone numbers of Amex GBT employees | ✓ | | |
|---|---|---|---|---|
| 108-3 | Non-public email addresses of Amex GBT employees and consultants | ✓ | | |
| 108-4 | Non-public email addresses of Amex GBT employees | ✓ | | |
| 109-1 | Privileged communication submitted only for *in camera* review to be sealed in its entirety | | | ✓ |
| 109-2 | Non-public email addresses and phone numbers of Amex GBT employees | ✓ | | |
| 109-3 | Non-public email addresses of Amex GBT employees and consultant | ✓ | | |
| 109-4 | Non-public email addresses of Amex GBT employees | ✓ | | |
| 109-5 | Privileged communication submitted only for *in camera* review to be sealed in its entirety | | | ✓ |
| 109-6 | Privileged communication submitted only for *in camera* review to be sealed in its entirety | | | ✓ |
| 109-7 | Privileged communication submitted only for *in camera* review to be sealed in its entirety | | | ✓ |